**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**HAROLD JOHNSON,**

                                        **Petitioner,**

                **v.**                                    **9:08-CV-1194**
                                                          **(GLS)**

**D. FITZPATRICK, Acting Supt.,**

                                        **Respondent.**
::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::
**APPEARANCES:**                        **OF COUNSEL:**

**FOR THE PETITIONER:**

**HAROLD JOHNSON**
Petitioner, *pro se*
05-A-4094
Washington Correctional Facility
Box 180
72 Lock 11 Lane
Comstock, NY 12821

**FOR THE RESPONDENT:**

**HON. ANDREW M. CUOMO**            **ELAINE L. BLOCK,  Esq.**
New York State Attorney General      Assistant Attorney General
120 Broadway
New York, NY 10271

**GARY L. SHARPE**
**UNITED STATES DISTRICT JUDGE**

                **MEMORANDUM-DECISION AND ORDER**

**I.      Background**

        According to the evidence adduced at trial, on January 2, 2005, twelve year old Yunis

Johnson was awoken at around 5:20 a.m. by the sound of tapping on her bedroom window on

Albany Street, in Albany, New York.  *See* Transcript of Trial of Harold Johnson (6/6/05) ("Trial

Tr.") at pp. 66-67.  Petitioner, *pro se* Harold Johnson ("Johnson"), who is Yunis' father, was

outside, and asked her to let him into the apartment she shared with her siblings and their mother, Altamese Johnson ("Altamese").  *Id.* at pp. 67-68.  Yunis let Johnson in through the front door of the apartment and then went back to bed.  *Id.* at p. 67.  At the time, Altamese was asleep in her bed with her seven-year-old daughter and two-year-old granddaughter, however she awoke when Johnson entered the bedroom.  *Id.* at pp. 162-64.  He then began to yell about a black car in her driveway and "a man."  *Id.* at pp. 164-65.  When Johnson briefly left the bedroom, Altamese ran to the dresser where she had left a medical device that enabled her to summon help.  *Id.* at p. 165.  When Johnson returned to the bedroom, Altamese told him that she had used her medical device to request help.  *Id.* at p. 167.  Johnson continued towards her, however, holding a hammer above his head.  *Id.*  As he brought the hammer down toward her face, she fainted.  *Id.* at 167-68.  When Altamese thereafter regained consciousness, Johnson was gone, and police and medical personnel soon arrived at the scene.  *Id.* at p. 172.

Albany Police Officer Amy Morgan arrived at Altamese's Albany Street residence soon after she requested assistance through the medical device.  *Id.* at p. 86.  The officer found Altamese to be "obviously stunned," and observed that the left side of her face was "very swollen" and bloody.  *Id.* at p. 89.  After Altamese informed the officer that she had been hit with a hammer, Officer Morgan noticed a hammer on the floor which the officer recovered as evidence.  *Id.* at pp. 91-92.  Upon arriving at the Albany Medical Center Hospital, the victim was treated for a fractured nose and received stitches under her left eye.  *Id.* at p. 173.  She had also sustained swelling and bruises to the left side of her face and to her arms.  *Id.* at pp. 173-74.

Doctor Patrick Caulfield was Altamese's treating physician.  Dr. Caulfield examined Altamese on January 7, 2005, at which time he noticed that her left eye was "just about swollen

shut" and the surrounding tissue was "fairly severely injured."  *Id.* at p. 310.  Dr. Caulfield also testified about the victim's medical history, which included a diagnosis of the blood disease sarcoidosis.  *Id.* at p. 296.  The doctor explained that, while that disease does cause swelling and discoloration of skin, most of the soft tissue damage to Altamese's face and arms, as depicted in photographs taken at Albany Medical Center, was unrelated to her medical condition.  *Id.* at pp. 296-301.  Dr. Caulfield further testified that some of the bruises on her arms were circular, and consistent with trauma that could be inflicted with the head of a hammer.  *Id.* at pp. 305-06.

During the course of their criminal investigation, law enforcement agents submitted swabs used on the head and handle of the hammer taken from the crime scene to the New York State Forensic Investigation Center.  *Id.* at pp. 256-57, 350-51.  New York State forensic scientist Timothy Goble, who performed forensic testing on the biological material found on the swabs, determined that Altamese's deoxyribonucleic acid ("DNA") was present on both the handle and head of the hammer.  *Id.* at pp. 360-61.  Goble could not definitively state that additional biological evidence that had been found on the handle of the hammer belonged to Johnson, however he could not be excluded as a contributor of that biological material.  *Id.* at p. 361.

The record further reflects that on January 4, 2005, at approximately 8:00 a.m., Johnson approached Albany Police Officer Sean Haley and told him that Johnson was aware that the police were looking for him because of an altercation he had had with his wife.  *Id.* at p. 282.  He was then transported to the police station, where he told the police that he had punched his wife, but did not hit her with a hammer.  *Id.* at p. 286.

As a result of the foregoing, on February 8, 2005, an Albany County grand jury returned

-3-

Indictment No. 22-9182 which charged Johnson with Burglary in the First Degree, contrary to New York's Penal Law ("Penal Law") § 140.30(2); Attempted Assault in the First Degree, in violation of Penal Law §§ 110/120.10(1); Assault in the Second Degree, contrary to Penal Law § 120.05(2); Criminal Possession of a Weapon in the Third Degree, in violation of Penal Law § 265.02(1); and Endangering the Welfare of a Child, contrary to Penal Law § 260.10(1).[1]

On June 6, 2005, Johnson's jury trial on the foregoing charges commenced in Albany County Court with Albany County Court Judge Joseph C. Teresa presiding.

In his defense to the charges, Johnson's counsel called forensic pathologist Jeffrey Hubbard, who testified that the bruises, swelling and lacerations Altamese sustained to her face were consistent with trauma inflicted by either a hammer or a fist, or by any other object that did not have a sharp, cutting edge. *Id.* at pp. 382-83. However, Dr. Hubbard believed it was more likely that those injuries were caused by a fist than a hammer. *Id.* at pp. 391-92. Dr. Hubbard also opined that the bruises on Altamese's left arm were the result of sarcoidosis, and not as a result of being hit by a hammer, because a hammer would have left C-shaped marks rather than the circular bruises she sustained. *Id.* at pp. 385-87.

Albany County Sheriffs Deputy Mark Duda testified on behalf of the defense. That witness testified that when Johnson was advised that a court order that permitted law enforcement agents to obtain a DNA sample from Johnson had been secured, he declared: "[I'm] willing to give the test. You're not going to find anything[.]" *Id.* at p. 411.

Johnson's defense to the burglary charge included the testimony of Spero Damopoulos, who had employed Johnson for several years and had known him for twelve years. *Id.* at p. 395.

---

[1] The trial court dismissed the Endangering the Welfare of a Child count on Johnson's motion at the close of the District Attorney's case in chief. *See* Trial Tr. at 378-79.

Damopoulos testified that Johnson lived with Altamese and her family, because Damopoulos had picked him up at the Albany Street address on the way to work many times, and he had had dinner there.  *Id.* at pp. 395-97.  Chenequa Johnson ("Chenequa"), Johnson's daughter by a previous marriage, testified that she saw Altamese visiting Johnson at the County Jail, and that her father lived with Altamese on Albany Street.  *Id.* at pp. 403-04.

    Johnson also testified on his own behalf.  He claimed that he lived at the Albany Street residence in late 2004, but noted that Altamese regularly cast him out of their apartment if he failed to "give her ... money."  *Id.* at pp. 413-14.   Johnson also stated that he was living with Altamese from Christmas Eve, 2004 through New Year's Day of 2005.  *Id.* at pp. 418-19.  He further claimed that he went to work on January 1, 2005, and was thereafter in the company of friends until 5 a.m. on January 2nd.  *Id.* at pp. 419-20.   When he arrived at the house, he rang the doorbell of Johnson's apartment but no one answered.  *Id.* at p. 420-22.  He then knocked on the bedroom window of his daughter, Yunis, who let him in the house through its front door.  *Id.* at p. 422.  When Johnson asked Yunis whether she had told Altamese that she was letting him in, Yunis informed him that she had.  *Id.*  As Johnson walked Yunis back to her bedroom, he saw that the back door of the apartment was ajar.  *Id.* at pp. 422-23.  Johnson became angry because the open door had placed Yunis in danger.  *Id.* at p. 423.  He then entered Altamese's bedroom and began yelling at her, asking her why she had left the door open.  *Id.*  Around that time, Johnson jumped out of bed, startling him.  *Id.*  Because Altamese had stabbed Johnson in the past, including one incident that required 365 stitches to treat, Johnson believed Altamese was reaching for the knife she kept near her bed so he punched her twice in the face.  *Id.* at pp. 428-29.

In explaining the circumstances surrounding his contact with law enforcement agents, Johnson testified that a police officer whom he knew told him that the police were looking for Johnson and that he should turn himself in. *Id.* at p. 436. He thereafter decided to surrender to the authorities. *Id.*

Johnson also testified that he was repeatedly the victim of Altamese's violence, and that he had previously shoved – but never punched – his wife. *Id.* at p. 440. He also noted that Altamese had visited him in jail "quite a few times," and told him that she would do "whatever it takes" to facilitate his release. *Id.* at pp. 448-49. Johnson also claimed that Altamese told him that she did not tell law enforcement agents that he hit her with a hammer. *Id.* at p. 449.

At the conclusion of his trial, the jury found Johnson guilty of assault in the second degree and criminal trespass in the second degree, but not guilty of the burglary in the first degree, attempted assault in the first degree, and criminal possession of a weapon in the third degree charges. *Id.* at pp. 611-14.

By affidavit dated July 22, 2005, Johnson's counsel filed a motion pursuant to New York's Criminal Procedure Law ("CPL") § 330.30 to set aside the jury's verdict (Dkt. No. 7-2) ("§ 330 Motion"). In that application, counsel argued, *inter alia*, that the jury's not guilty verdict regarding the criminal possession of a weapon charge was inconsistent with its guilty verdict concerning the second degree assault charge, and that the prosecution had failed to establish the elements of the second degree assault charge. *Id.* The District Attorney opposed that motion, and on August 4, 2005, just prior to sentencing, the County Court denied Johnson's § 330 Motion in its entirety. *See* Transcript of Sentencing of Harold Johnson (8/4/05) at pp. 2-3. That court thereafter sentenced Johnson, as a predicate felon, to a determinate term of seven years

imprisonment on the second degree assault conviction and a concurrent, one year term of imprisonment on the second degree criminal trespass conviction, to be followed by five years post-release supervision. *Id.* at p. 9.

Johnson appealed his convictions to the New York State Supreme Court, Appellate Division, Third Department.  In that appeal, appellate counsel claimed, *inter alia*, that:  i) the verdict was inconsistent and repugnant; ii) Judge Teresi erred in not instructing the jury that if it found Johnson not guilty of criminal possession of a weapon, then it must also acquit him of the second degree assault charge, and that trial counsel was ineffective for failing to object to the jury's inconsistent verdict; iii) Johnson's conviction of assault in the second degree was against the weight of the evidence and the evidence was insufficient to support such conviction. *See* Dkt. No. 7-4.  In its decision dated May 17, 2007, the Third Department unanimously affirmed Johnson's judgment of conviction.  *People v. Johnson*, 40 A.D.3d 1270 (3d Dept. 2007).  His subsequent application for leave to appeal that determination was denied by New York's Court of Appeals.  *People v. Johnson*, 9 N.Y.3d 877 (2007).

**B.    This Action**

Johnson commenced the present action, *pro se*, on November 4, 2008.  *See* Dkt. No. 1. In his habeas petition, he claims that:  i) his conviction of assault in the second degree was against the weight of the evidence and not supported by legally sufficient evidence; ii) trial counsel's failure to: (a) request a jury charge directing that such body deliver a consistent verdict; and (b) preserve an inconsistent verdict claim for appellate review through a contemporaneous objection, constituted ineffective assistance of counsel; and iii) Johnson was wrongfully subjected to Double Jeopardy due to the procedure adopted by New York for challenging

inconsistent verdicts.  *See* Petition, Grounds One through Three.

On April 30, 2009, the Office of the Attorney General for the State of New York, acting on respondent's behalf, filed a response in opposition to Johnson's petition and provided the Court with copies of state court records relating to his conviction.  *See* Dkt. Nos. 6-7.  Attached to respondent's answer is a memorandum of law in opposition to the petition.  *See* Attachment to Dkt. No. 6 ("Resp. Mem.").  In that memorandum, respondent claims that Johnson is procedurally barred from obtaining the relief he seeks as to some of his claims, and that all of his grounds for relief are without merit.  *Id.*

On June 18, 2009, Johnson filed a Reply in further support of his habeas petition.  Dkt. No. 8 ("Reply").  This matter is currently before this Court for disposition.

## II.   **Discussion**

### A.   **Procedurally Barred Claim**

Respondent initially contends that Johnson has failed to fully exhaust his claims challenging the effectiveness of his trial counsel.  *See* Resp. Mem. at pp. 14-16.[2]  In that ground, Johnson argues that his trial counsel rendered ineffective assistance by failing to request that Judge Teresi charge the jury that if it found Johnson not guilty of criminal possession of a

---

[2] Although respondent additionally argues that Johnson has also failed to exhaust his claim that the jury's verdict on that charge was against the weight of the evidence, *see* Resp. Mem. at pp. 14-15, the Court's review of Johnson's petition fails to reveal any such ground for relief.  *See* Petition.  Regardless, "weight of the evidence" review is a product of New York state statute and therefore merely a state law issue.  *See* CPL § 470.15; *Graham v. Ricks*, No. 9:02-CV-0303, 2004 WL 768579, at *14 (N.D.N.Y. Apr. 7, 2004) (McCurn, S.J.) (citations omitted).  Thus, even if Johnson had raised such a claim in the present action, it would have necessarily been denied by this Court because no cognizable federal issue is presented by a habeas claim challenging the weight of the evidence adduced at trial.  *Graham*, 2004 WL 768579, at *14; *Cardena v. Giambruno*, 2004 WL 239722, at *4 (S.D.N.Y. Feb. 10, 2004); *Robinson v. Ricks*, No. 00 CV 4526, 2004 WL 1638171, at *3 (E.D.N.Y. July 22, 2004) ("[c]hallenges to the weight of the evidence supporting a conviction are not cognizable on federal habeas review") (citing *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996)); *Camacho v. McKinney*, No. 04 Civ.2226, 2004 WL 1490308, at *1 (S.D.N.Y. July 1, 2004) ("petitioner's first ground ... arguing only that the verdict was against the weight of the evidence – [] raises no claim cognizable in a federal habeas corpus proceeding").

weapon in the third degree, then it must also acquit on him of the second degree assault charge. *See* Petition, Ground Two.  That claim further contends that trial counsel rendered ineffective assistance by failing to timely move to set aside the verdict as inconsistent or repugnant.  *Id.*

It is well-settled that a federal district court " 'may not grant the habeas petition of a state prisoner unless it appears that the applicant has exhausted the remedies available in the courts of the State ....' "  *Shabazz v. Artuz*, 336 F.3d 154, 160 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001)); *see also Hill v. Mance*, 598 F.Supp.2d 371, 375 (W.D.N.Y. 2009).  This is because "[s]tate courts, like federal courts, are obliged to enforce federal law." *Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)) (other citations omitted).  As the Supreme Court noted in *O'Sullivan*, "[c]omity ... dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief."  *Id.*, 526 U.S. at 844 (citations omitted); *see also Galdamez*, 394 F.3d at 72 (citation omitted).[3]  Thus, this Court must determine whether Johnson has fully exhausted his ineffective assistance of trial counsel claims.

A petitioner exhausts available state remedies in the federal habeas context by:  "(i) present[ing] the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts); and (ii) inform[ing] that court (and lower courts) about both the factual and legal bases for the federal claim."  *Ramirez v. Attorney Gen.,* 280 F.3d 87, 94 (2d Cir. 2001) (quoting *Picard v. Connor*, 404 U.S. 270, 276-77 (1971)).

---

[3] This exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseemliness of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance."  *O'Sullivan*, 526 U.S. at 845 (quotation and citations omitted); *see also Galdamez*, 394 F.3d at 72 (citation omitted).

A "basic requirement" of this exhaustion doctrine is that "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (citation omitted); *see also Berry v. Hulihan,* No. 08 Civ. 6557, 2009 WL 233981, at *2 (S.D.N.Y. Jan. 28, 2009) (citations omitted); *Jackson v. Senkowski*, No. 03 CV 1965, 2007 WL 2275848, at *5 (E.D.N.Y. Aug. 7, 2007). A "state prisoner does not 'fairly present' a claim to a state court" where the appellate brief "does not alert [the court] to the presence of a federal claim ...." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *see also Williams v. Breslin*, No. 06-CV-2479, 2008 WL 4179475, at *3 (E.D.N.Y. Sept. 9, 2008) (citing *Baldwin*).

In the "preliminary statement" portion of Johnson's brief, appellate counsel argued that:

> The legal issues on this appeal are whether defendant received a fair trial in that the evidence was insufficient and the weight of the evidence was against the conviction. It is also argued that the conviction for Assault in the Second Degree implicated Double Jeopardy principles.... [Johnson] was thus deprived of Due Process, procedural and substantive. He further was deprived of Equal Protection of the law and of a Fundamentally Fair Trial. He further was denied his right to an effective attorney. He was subjected to double jeopardy. Thus his constitutional rights were violated under the 4th, 5th, 6th and 14th Amendments to the U.S. Constitution....

*See* Appellate Brief on Appeal (10/12/2006) ("App. Br.") at p. iii. Appellate counsel thereafter argued that the trial court erred in not charging the jury that if it found Johnson not guilty of criminal possession of a weapon in the third degree, it must also acquit him of the charge of assault in the second degree. App. Br. at p. 2. Counsel concluded this argument by asserting that "[i]f the fault be laid at the foot of defense counsel [for not raising such claim], then it was ineffective assistance of counsel. *See People v. Douglas*, 296 A.D.2d 656, 657-8 [3d Dept. 2002)]."

That brief's reference to Johnson's "right to an effective attorney," coupled with its citation to the Sixth Amendment to the United States Constitution – which provides, *inter alia*, that "[i]n all criminal prosecutions, the accused shall enjoy the right to ... have the Assistance of Counsel for his defence," *see* U.S. Const., amend VI – may have satisfied petitioner's burden of alerting the Appellate Division to the presence of a federal claim regarding ineffective assistance in Johnson's appellate brief.  However, to satisfy the exhaustion requirement applicable to federal habeas petitions, a petitioner must have also asserted all claims for which federal habeas review is sought in his application seeking leave to appeal from New York's Court of Appeals. *See Galdamez*, 394 F.3d at 74-75 (citations omitted); *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000) (describing process for seeking leave to appeal to New York's Court of Appeals); *Jamison v. Girdich*, No. 03 CIV.4826, 2005 WL 2338660, at *4 (S.D.N.Y. Sept. 26, 2005); *Geraci v. Sheriff, Schoharie County Jail*, No. 9:99-CV-0405, 2004 WL 437466, at *3 (N.D.N.Y. Feb. 20, 2004) (Sharpe, J.) (citations omitted).

In an apparent effort to claim that his ineffective assistance claims have been exhausted, Johnson notes that his appellate counsel argued in the Leave Application filed with the Court of Appeals that Johnson's conviction amounted to "a serious miscarriage of justice."  Reply at ¶ 9 (citing Leave Application at p. 3).  However counsel's reference to a claimed miscarriage of justice falls far short of establishing that such counsel alerted New York's Court of Appeals to the presence of a federal claim with respect to Johnson's contention that he received the ineffective assistance of trial counsel.[4]  Since Johnson's Leave Application plainly failed to alert that court of any federal claim alleging ineffective assistance, *see* Leave Application, he has

---

[4] Johnson does not appear to have ever claimed, in any state proceeding, that his appellate counsel rendered ineffective assistance by failing to assert Johnson's procedurally defaulted theories in federal terms.  *See* Petition.

failed to demonstrate that he fully exhausted the theories he now asserts in support of his federal habeas claim alleging ineffective assistance of counsel.[5]

When a claim has not been fully exhausted by a habeas petitioner, a federal court may find that there is an absence of available state remedies "if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." *Aparicio*, 269 F.3d at 90 (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)); *see also Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000).[6] Therefore, this Court must determine whether it would be futile for Johnson to present any of the above-mentioned claims to New York's Court of Appeals through a second leave application.

A criminal defendant may file only one application for leave to appeal with the New York Court of Appeals. *See Jones v. Woods*, No. 07 CV 1326, 2009 WL 4906882, at *2 (E.D.N.Y. Dec. 18, 2009) (citing N.Y. Court Rules § 500.10(a)); *see also People v. Spence*, 82 N.Y.2d 671 (1993). Since Johnson may not properly raise an ineffective assistance claim through another leave application filed with the Court of Appeals, both of petitioner's theories alleging ineffective assistance are "deemed exhausted" for purposes of his habeas application. *St. Helen v. Senkowski*, 374 F.3d 181, 183-84 (2d Cir. 2004); *Spence v. Superintendent, Great Meadow Correctional Facility*, 219 F.3d 162, 170 (2d Cir. 2000); *Jones*, 2009 WL 4906882, at *2. Although these claims are "deemed exhausted," they are procedurally defaulted. *See Aparicio*, 269 F.3d at 90 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)); *see also*

---

[5] Habeas corpus petitioners bear the burden of demonstrating that they have fully exhausted available state remedies. *Fink v. Bennett*, 514 F.Supp.2d 383, 388 (N.D.N.Y. 2007) (McCurn, S.J.) (collecting cases).

[6] Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal district court has the authority to deny (but not grant) an unexhausted claim on the merits, and consider the exhausted claims on the merits. *Aparicio*, 269 F.3d at 91 n.5; *Cuadrado v. Stinson*, 992 F.Supp. 685, 687 (S.D.N.Y. 1998).

*Jones*, 2009 WL 4906882, at *2; *Ciochenda v. Artus*, No. 06 Civ. 5057, 2009 WL 1026018, at *5 (S.D.N.Y. Apr. 9, 2009) (unexhausted claims which petitioner can no longer pursue in state court are procedurally forfeited).

Federal courts may only consider the merits of procedurally defaulted claims where the petitioner can establish both cause for the procedural default and resulting prejudice, or alternatively, that a fundamental miscarriage of justice would occur absent federal court review.[7] *See Dixon*, 293 F.3d at 80-81 (citing *Coleman*); *St. Helen*, 374 F.3d at 184 ("[i]n the case of procedural default (including where an unexhausted claim no longer can proceed in state court), [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent' ") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)) (other citations omitted); *Jones*, 2009 WL 4906882, at *2; *Parker v. Phillips*, No. 05-CV-1323, 2008 WL 4415255, at *3 (E.D.N.Y. Sept. 24, 2008) (federal courts may only consider procedurally barred claims where the petitioner establishes cause for his default and prejudice therefrom, or that he is actually innocent of the crime of which he was convicted).

To establish legal "cause" which would enable this Court to consider his procedurally forfeited claims, Johnson must show that some objective, external factor impeded his ability to fully exhaust those claims. *See Coleman*, 501 U.S. at 753; *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999); *Pinero v. Greiner*, No. 01 CIV. 9991, 2007 WL 2712496, at *21 (S.D.N.Y. Sept. 17, 2007) (citing *Restrepo*).  Examples of such external factors include "interference by officials," ineffective assistance of counsel, or proof that "the factual or legal basis for a claim

---

[7] A fundamental miscarriage of justice exists "where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002).

was not reasonably available" at the time of petitioner's default.  *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Ikker v. Taylor*, No. 08 CV 3301, 2008 WL 5110866, at *4 (E.D.N.Y. Dec. 3, 2008), *appeal dismissed*, *Ikker v. Taylor*, No.09-0090-pr (2d Cir. Apr. 17, 2009).

Despite having filed a Reply in support of his habeas application, Johnson has failed to establish legal cause for the procedural default detailed *ante*.[8]  Since Johnson has not demonstrated legal cause for that default, this Court need not consider whether he has suffered the requisite prejudice, because federal habeas relief is unavailable under this limited exception permitting review of procedurally forfeited claims unless **both** cause and prejudice is demonstrated.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Bonilla v. Burge*, No. 06CIV.4755, 2009 WL 4884092, at *10 (S.D.N.Y. Dec. 17, 2009) (citing *Stepney*); *Long v. Lord*, No. 03-CV-0461, 2006 WL 1977435, at *6 (N.D.N.Y. Mar. 21, 2006) (McCurn, S.J.); *D'Alessandro v. Fischer*, No. 01 CIV. 2551, 2005 WL 3159674, at *9 n.10 (S.D.N.Y. Nov. 28, 2005) ("[a]s Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing *Stepney*).

The finding that Johnson has failed to establish cause for his procedural default does not necessarily preclude this Court from considering his procedurally forfeited ineffective assistance claims, however, because as noted above, a federal court may nonetheless properly review such theories if it is convinced that the failure to consider the defaulted claims would amount to a fundamental miscarriage of justice.  *E.g.*, *Dixon*, 293 F.3d at 80-81 (citation omitted).  On this question, however, the Second Circuit has noted that:

[T]he fundamental miscarriage of justice exception is "extremely

---

[8] The petitioner bears the burden of demonstrating cause for his procedural default and resulting prejudice.  *See Simpson v. Portuondo*, No. 01CIV.8744, 2002 WL 31045862, at *5 (S.D.N.Y. June 4, 2002).

> rare" and should be applied only in "the extraordinary cases."
> *Schlup v. Delo*, 513 U.S. 298, 321-22 (1995)..... " '[A]ctual
> innocence' means factual innocence, not mere legal insufficiency."
> *Bousley*[], 523 U.S. [at] 623 .... "To establish actual innocence, [a]
> petitioner must demonstrate that, 'in light of all the evidence,' 'it is
> more likely than not that no reasonable juror would have convicted
> him.' " *Id.* (citing *Schlup*, 513 U.S. [at] 327-28) ... (some internal
> citations and quotation marks omitted).

*Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003); *see also D'Alessandro*, 2005 WL 3159674,

at *8; *Marengo v. Conway*, 342 F.Supp.2d 222, 228 (S.D.N.Y. 2004).

        In conjunction with this claim, the state court record provided to the Court, including the

transcript of the criminal trial below and the Appellate Division's decision denying Johnson's

claims challenging the weight and sufficiency of the evidence adduced at trial, have been

reviewed.  Based upon that review, this Court agrees with the Appellate Division that "[t]he

evidence presented at trial was legally sufficient to support the conviction." *Johnson*, 40 A.D.3d

at 1272.[9]  Petitioner has therefore not demonstrated that the failure to consider his procedurally

defaulted claims would result in a fundamental miscarriage of justice.

        Since petitioner has not demonstrated that he is entitled to review of his procedurally

forfeited claims under this final exception permitting habeas review of such claims, the Court

denies, as procedurally forfeited, his second ground for relief.

        **B.**     **Remaining Claims**

              **1.**     **Applicable Standard of Review**

        The enactment of the AEDPA brought about significant new limitations on the power of

a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254.  In discussing

---

[9] The evidence adduced at trial concerning Johnson's guilt is discussed more fully by the Court *post* in conjunction
with his claim challenging his conviction of the second degree assault charge.

this deferential standard, the Second Circuit noted in *Jones v. West*, 555 F.3d 90 (2d Cir. 2009)

that:

> a federal court may grant a writ of habeas corpus for a claim that
> has previously been adjudicated on the merits by a state court only
> if the adjudication of the claim:
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light of
> > the evidence presented in the State court
> > proceeding.

*Id.* at 96 (quoting 28 U.S.C. § 2254(d)); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir.

2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. LeFevre*, 246 F.3d

76, 88 (2d Cir. 2001).  In providing guidance concerning application of this standard, the Second

Circuit has noted that:

> [A] state court's decision is "contrary to" clearly established
> federal law if it contradicts Supreme Court precedent on the
> application of a legal rule, or addresses a set of facts "materially
> indistinguishable" from a Supreme Court decision but nevertheless
> comes to a different conclusion than the Court did.  [*Williams v.
> Taylor*, 529 U.S. 362,] at 405-06 [(2000)]; *Loliscio v. Goord*, 263
> F.3d 178, 184 (2d Cir. 2001).... [A] state court's decision is an
> "unreasonable application of" clearly established federal law if the
> state court "identifies the correct governing legal principle from
> [the Supreme] Court's decisions but unreasonably applies that
> principle to the facts" of the case before it.  *Williams*, 529 U.S. at
> 413.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237 F.3d

147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Significantly, a federal court engaged in habeas review is not charged with determining

-16-

whether the state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." *Williams*, 529 U.S. at 409; *see also Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001). "While the precise method for distinguishing objectively unreasonable decisions from merely erroneous ones is somewhat unclear, it is well-established in this Circuit that the objectively unreasonable standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." *Sorto v. Herbert*, 497 F.3d 163, 169 (2d Cir. 2007) (internal quotation marks and alteration omitted). That increment, however, "need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Overton v. Newton*, 295 F.3d 270, 277 (2d Cir. 2002) (internal quotation marks omitted).

### 2. <u>Substance of Johnson's Remaining Claims</u>

#### (a) <u>Ground One</u>

In his first ground for relief, Johnson claims that the jury's verdict on the second degree assault conviction was not supported by sufficient evidence. *See* Petition, Ground One.

##### i. <u>Clearly Established Supreme Court Precedent</u>

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he is charged. *See Fiore v. White*, 531 U.S. 225, 228-29 (2001); *Jackson v. Virginia*, 443 U.S. 307, 315 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). An inquiry into whether there was sufficient evidence adduced at trial to support a conviction "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S.

390, 402 (1993).  A habeas petitioner claiming that there was insufficient evidence supporting a conviction is only entitled to relief under 28 U.S.C. § 2254 if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  *Jackson*, 443 U.S. at 324; *Schlup v. Delo*, 513 U.S. 298, 323 n.38 (1995).  The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor.  *Jackson*, 443 U.S. at 319.  Thus, federal courts are to determine "whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt."  *United States v. Powell*, 469 U.S. 57, 67 (1984) (citing *Jackson*) (other citations omitted).

> ### ii.    Contrary to, or Unreasonable Application of, Clearly Established Supreme Court Precedent

In support of this ground for relief, petitioner notes that in the Indictment and at trial, Johnson was accused of using a hammer to cause physical injury to his victim.  *See* Petition, Ground One.  Johnson notes, however, that the victim testified at trial that she did not observe Johnson hit her with a hammer, or feel a hammer striking her, at the time of the claimed assault, and that his trial testimony demonstrated that he only used his fist when he stuck her.  *Id.*  He argues that the medical evidence presented at trial "could not pinpoint the actual cause of the injury, although certain testimony suggested that a hammer was not used."  *Id.*  He additionally asserts that "[t]he jury found that no hammer was involved and acquitted Petitioner of the Criminal Weapon Possession (the hammer)."  *Id.*  He argues that "the essential elements to uphold a conviction for Assault 2nd were not present, and therefore, Petitioner [was] subject[ed] to an unconstitutional conviction and felony sentence of imprisonment."  *Id.*

The Appellate Division rejected Johnson's challenge to the sufficiency of evidence

-18-

adduced at his trial.  *Johnson*, 36 A.D. 3d at 1272.  This Court must therefore ascertain whether that determination is either contrary to, or represents an unreasonable application of, the clearly established Supreme Court precedent referenced *ante*.

In considering this habeas claim, the Court notes that a habeas petitioner " ' bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence.' "  *Policano v. Herbert*, 507 F.3d 111, 116 (2d Cir. 2007) (quoting *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000)).  A challenge to the sufficiency of the evidence adduced at trial brought by a habeas petitioner "does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' "  *Jackson*, 443 U.S. at 318-19 (quoting *Woodby v. I.N.S.*, 385 U.S. 276, 282 (1966)).  "Rather, the well-established Supreme Court precedent holds that 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' "  *Murray v. Greene*, No. 9:06-CV-0322, 2009 WL 3165637, at *13 (N.D.N.Y. Sept. 29, 2009) (Kahn, J., adopting Report-Recommendation of Magistrate Judge Gustave J. DiBianco) (quoting *Jackson*, 443 U.S. at 318-19).

In the criminal matter below, to convict Johnson of the second degree assault charge, the District Attorney was required to establish that Johnson, "with intent to cause physical injury to another person ... cause[d] such injury to that person by means of a dangerous instrument."  *E.g.*, Trial Tr. at p. 587 (County Court's instructions to the jury on elements of second degree assault charge).

This Court concludes that the evidence presented at trial establishing petitioner's guilt of

the second degree assault charge was more than sufficient to surpass the relatively modest hurdle

posed by *Winship* and its progeny.  Specifically, as the Appellate Division noted in rejecting

Johnson's challenge to the sufficiency of evidence in the context of his direct appeal, at the

subject criminal trial:

> the victim testified that she saw [Johnson] with a hammer in his
> hand and that he raised it over his head as he approached her.  She
> related that, at this point, she must have passed out and had no
> further recall of the assault.  Police, who arrived shortly after the
> incident, found a hammer between the bed and the wall in the
> victim's bedroom.  Her injuries included bruises with a rounded
> shape that her doctor indicated were consistent with the shape of
> the head of the hammer found in her room.  Even [Johnson's]
> expert acknowledged that some of the victim's injuries were
> consistent with multiple hammer blows as well as multiple
> punches by a fist.  The victim's DNA was found on the head of the
> hammer.

*Johnson*, 36 A.D. 3d at 1272.

Since Johnson has failed to meet the heavy burden required of him to prevail on this

ground for relief, the Court denies his claim challenging the sufficiency of evidence presented at

trial by the prosecution regarding the second degree assault charge.

### (b)    Ground Three

In Johnson's third and final ground, he claims that the jury's verdict was inconsistent

because it found him guilty of the second degree assault charge but not guilty of criminally

possessing the dangerous instrument necessary to perpetrate the assault of which he was

convicted.  *See* Petition, Ground Three.  In a related claim Johnson includes in this ground for

relief, he contends that the procedure attorneys must follow in New York when a jury returns an

inconsistent verdict – which requires defense counsel to make an application to the County Court

that the jury reconsider its inconsistent verdict before the jury is discharged – amounts to a

violation of the United States Constitution's prohibition against Double Jeopardy.  *Id.*; *see also* CPL § 310.50.

The Appellate Division found these appellate claims to be "unavailing."  *Johnson*, 40 A.D.3d at 1273.  This Court must therefore ascertain whether that finding is either contrary to, or represents an unreasonable application of, relevant, clearly established Supreme Court precedent.

### i.     Clearly Established Supreme Court Precedent

In *Dunn v. United States*, 284 U.S. 390 (1932), the Supreme Court, in discussing the concept of inconsistent jury verdicts, opined that:

> The most that can be said in [] cases [in which the jury renders an inconsistent verdict] is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.  We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.

*Dunn*, 284 U.S. at 393 (internal quotation and citation omitted); *see also Powell*, 469 U.S. at 64-65 (quoting *Dunn*).

With respect to Johnson's related, Double Jeopardy claim, the Court notes that the Fifth Amendment's prohibition against Double Jeopardy protects persons from being prosecuted twice for the same criminal offense.  *See* U.S. Const. Amend. V; *see also Brown v. Ohio*, 432 U.S. 161, 165 (1977).  The Supreme Court has noted that when a defendant has violated two separate criminal statutes, the protection against Double Jeopardy is implicated when both statutes prohibit the same offense or when one offense is a lesser included offense of the other.  *Rutledge v. United States*, 517 U.S. 292, 297 (1996).

### ii.     Contrary to, or Unreasonable Application of, Clearly Established Supreme Court Precedent

-21-

With respect to petitioner's claim that he is entitled to habeas relief because the jury's verdict was inconsistent, the Court notes that the Supreme Court has observed that because the Government is unable to seek review of the portion of the verdict that acquits a defendant due to the Double Jeopardy Clause of the United States Constitution, it is "unclear whose ox has been gored" by inconsistent or repugnant verdicts.  *Powell*, 469 U.S. at 65-66 (footnote omitted). Consequently, the Supreme Court has held that inconsistent verdicts are not subject to judicial review.  *Id.*; *see also Bradshaw v. Stumpf*, 545 U.S. 175, 189 (2005) ("inconsistent jury verdicts may be enforced") (JJ. Souter and Ginsburg, concurring) (citing *Powell*, *Dunn*); *Dowling v. United States*, 493 U.S. 342, 353-54 (1990) ("inconsistent verdicts are constitutionally tolerable") (citation omitted); *Harris v. Rivera*, 454 U.S. 339, 345 (1981) ("[i]nconsistency in a verdict is not a sufficient reason for setting it aside").  Thus, Johnson is not entitled to habeas relief based upon his claim that the jury returned an inconsistent or repugnant verdict against him.

With respect to petitioner's related claim that New York's procedure for challenging inconsistent verdicts violates the Constitution's prohibition against Double Jeopardy, the Court notes that this aspect of Johnson's habeas petition is necessarily premised on his claim that the jury's verdict was inconsistent.  *See* Petition, Ground Three (procedures that a defendant must follow "in an inconsistent verdict setting" violate Johnson's right against Double Jeopardy). However, petitioner has not demonstrated that the jury's verdict was inconsistent.  As the First Department has observed in rejecting a similar claim raised by an individual who was acquitted of criminal possession of a weapon in the second degree but convicted of assault in the second degree:

-22-

> The elements of these crimes are not identical.  While it may
> appear that these verdicts are inconsistent they are in fact not, as
> there is a rational theory which can support each one.  In finding
> the defendant not guilty of criminal possession of a weapon in the
> second degree the jury may have concluded that the defendant
> possessed the weapon initially without any intent to use it
> unlawfully but that in the course of the altercation ... decided to
> and did use the weapon offensively....

*People v. Garcia*, 72 A.D.2d 356, 367 (1st Dept.), *aff'd*, *People v. Garcia*, 52 N.Y.2d 716

(1980); *see also People v. Segues,* 176 A.D.2d 970, 971 (2d Dept. 1991) ("jury's acquittal ... on

two counts of criminal possession of a weapon in the third degree, which were premised on the

two knives which [appellant] used to inflict the injuries noted above, is not inconsistent with its

[guilty] verdict on the charge of assault in the second degree) (citations omitted); *People v.*

*Jordan*, 175 A.D.2d 649, 650 (4th Dept. 1991) (appellant's "conviction for assault in the first

degree was not repugnant to his acquittal of criminal possession of a weapon in the third degree.

.... [T]he jury could have found that [appellant's] initial possession of the knife was without the

intent to use the knife unlawfully against the victim).

As in the foregoing cases, the elements of the crimes that Johnson was accused of

committing – second degree assault and third degree criminal possession of a weapon – were not

identical, and petitioner has not demonstrated that the verdict returned by the jury concerning

Johnson was inconsistent.  Since Johnson has not established that the jury's verdict was

inconsistent, he cannot prevail on his habeas claim related to the procedure trial counsel was

required to follow to challenge a purportedly inconsistent verdict.  Moreover, absent Johnson's

unsubstantiated claim that his conviction on the assault charge was inconsistent with his acquittal

on the criminal possession of a weapon charge, there is no evidence before this Court that his

convictions in criminal matter below violated Johnson's right to not be subjected to Double

Jeopardy.

Since petitioner has not demonstrated that the Appellate Division's decision rejecting this claim when raised by him on direct appeal, *see Johnson*, 40 A.D.3d at 1273, is either contrary to, or represents an unreasonable application of, the relevant, clearly established Supreme Court precedent discussed above, the Court denies and dismisses his final claim seeking federal habeas relief.

**III.    Certificate of Appealability**

Finally, the Court notes that 28 U.S.C. § 2253(c) provides in relevant part that:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from –
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court ....[10]

28 U.S.C. § 2253(c)(1)(A).  A Certificate of Appealability may only be issued "if the applicant has made a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  Since petitioner has failed to make such a showing herein, the Court declines to issue any Certificate of Appealability in this matter.

**WHEREFORE**, after having reviewed the state court record, the documents submitted by the parties in conjunction with this action, the applicable law, and for the reasons discussed herein, it is hereby

**ORDERED**, that the habeas petition filed by Johnson (Dkt. No. 1), is **DENIED** and

---

[10] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  *See* Fed.R.App.P. 22(b).

**DISMISSED**, and it is further

**ORDERED**, that any state court records not filed herein be returned directly to the

Attorney General at the conclusion of these proceedings (including any appeal of this

Memorandum-Decision and Order filed by any party), and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the

parties by regular or electronic mail.

A Certificate of Appealability shall not be issued by this Court.

February 1, 2010

United States District Court Judge